IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Criminal Action No. 18-cr-00172-MSK

UNITED STATES OF AMERICA,

    Plaintiff,

vs.

JASON THOMPSON,

    Defendant.
_____

**REPORTER'S TRANSCRIPT**
(Sentencing Hearing: Order)
_____

    Proceedings before the HONORABLE MARCIA S. KRIEGER, Judge, United States District Court for the District of Colorado, commencing at 11:14 a.m., on the 23rd day of January, 2019, in Courtroom A702, United States Courthouse, Denver, Colorado.

**A P P E A R A N C E S**

    PEGEEN RHYNE, Assistant U.S. Attorney, 1801 California Street, Suite 1600, Denver, Colorado, 80202, appearing for the Government.

    THOMAS EUGENE HENRY, Attorney at Law, 9836 Ontario Street, Omaha, Nebraska 68124, appearing for the Defendant.

THERESE LINDBLOM, Official Reporter
901 19th Street, Denver, Colorado 80294
Proceedings Reported by Mechanical Stenography
Transcription Produced via Computer

1       (The following proceedings were had and entered of
2   record after the Court heard the arguments of counsel and
3   statement of defendant:)
4       *THE COURT:* All right. Thank you very much.
5       I'll announce the sentence that I intend to impose.
6   And, of course, counsel, you'll have an opportunity to make
7   further objection before judgment is entered. If you believe
8   that my calculation of the sentence is premised upon error or
9   it raises an issue that you've not had the opportunity to
10  address, I invite you to request a continuance.
11      Imposition of a sentence in a federal criminal case is
12  governed by a number of statutes. The umbrella statute is
13  18 U.S.C. Section 3553. It requires me to impose a sentence
14  that is sufficient but not greater than necessary to accomplish
15  particular objectives: To reflect the seriousness of the
16  offense; to promote respect for the law; to provide just
17  punishment; to adequately deter criminal conduct; to protect
18  the public from further crimes by the defendant; and to provide
19  the defendant with needed educational or vocational training,
20  medical care, or other correctional treatment in the most
21  effective manner.
22      Now, in order to craft a sentence that meets those
23  objectives, the statute tells me to consider the nature and
24  circumstances of the offense; the history and characteristics
25  of the defendant; the kinds of sentences that are available;

1   the sentence prescribed in the federal sentencing guidelines;
2   the need to avoid unwarranted sentence disparities among
3   defendants with similar records found guilty of similar
4   conduct.
5   　　　　At the beginning of the hearing, I identified those
6   documents that I had studied in preparing for this hearing,
7   confirmed that indeed both parties had had adequate opportunity
8   to review those documents; asked if there were any other
9   documents I should be considering; and there were none.  We
10  turn to the presentence report, and there was no dispute as to
11  the facts contained in the presentence report, no dispute as to
12  the calculation of the sentence under the federal sentencing
13  guidelines, and that is where we start.
14  　　　　Under the federal sentencing guidelines, we have two
15  counts:  Count 1, possession with intent to distribute a
16  controlled substance, and Count 2, possession of a firearm and
17  ammunition by a prohibited person.  They're grouped.  And the
18  guideline for violation of 21 U.S.C. Section 841(a)(1) is found
19  in Section 2D1.1.  According to Section 2D1.1(c)(1), offenses
20  involving at least 50 grams but less than 200 grams of
21  methamphetamine have a Base Offense Level of 24.  Here, the
22  defendant had 96.56 grams of a mixture and substance containing
23  methamphetamine.  Then there was a specific offense
24  characteristic, and that was the involvement of the firearm, a
25  Taurus model Curve .380 caliber pistol, and that results in an

1   increase in offense level of two, for a total offense level of
2   26.
3          Then the defendant received the maximum downward
4   adjustment for his acceptance of responsibility.  Three levels
5   are reduced pursuant to Sections 3E1.1(a) and (b); and that
6   results, then, in a Total Offense Level of 23.  That is the
7   first calculation.
8          The second calculation is criminal history.  Criminal
9   history here begins with several juvenile convictions for which
10  no criminal history points are assigned.  The adult criminal
11  convictions begin in 1995 with disorderly conduct, a
12  misdemeanor; 1996, theft, liquor possession, and minor -- by a
13  minor and interference with the police; '97, driving under the
14  influence; in 1998, conspiracy to distribute heroin, cocaine,
15  marijuana, and methamphetamine.  This is a felony conviction
16  for which three criminal history points are assigned.  In 2011,
17  he was convicted of driving under the influence.  One point is
18  assigned for that.  In 2014, theft of between 20,000 and
19  $100,000.  That's a felony conviction, with three criminal
20  history points.  All told, there is a score of seven criminal
21  history points, that puts the defendant in Criminal History
22  Category IV.
23         With a Criminal History Category of IV and an offense
24  level of 23, the guidelines recommend on Count 1 and on Count 2
25  jointly, 70 to 87 months of incarceration, supervised release

1  on Count 1 of 4 years and on Count 2 of 1 to 3 years, a fine of
2  20,000 to $5 million, and a special assessment of $100.
3             I've heard the arguments that have been made by
4  counsel, and I've listened carefully to what Mr. Thompson has
5  said.  There is no request for a departure under the guidelines
6  and no request for imposition of a variant sentence.
7             There are several observations that I make here.
8  First of all, sentencing in a criminal case has nothing to do
9  with who a person is.  It's not about being a good person or a
10 bad person.  Any one of us here in the courtroom on our worst
11 day, doing the worst thing that we've ever done would be
12 considered a bad person if that's all we looked at.  And the
13 opposite is true, if we look at the best thing that any one of
14 us has done, and that's all we looked at, we would be
15 considered a good person.  But that's not what sentencing is
16 about.  It's about conduct, it's about behavior, it's about
17 what Mr. Thompson did, not about who he is.  Mr. Thompson, like
18 most people, has strengths and weaknesses.  He has a great
19 number of abilities and talents, he has a tendency toward
20 perseverance and hard work; and on the other hand, he has
21 weaknesses that have led him into behavior that is illegal and
22 for which he must be punished.
23            I think that both his attorney and the Government's
24 attorney have properly identified some of those weaknesses:
25 Mental health issues, addiction issues.  They undercut

1   Mr. Thompson's strengths.  But the conduct that I'm sentencing
2   him here for is not in dispute.  He was in possession of drugs;
3   he was in possession of a firearm that he was prohibited from
4   having.

5         Those are both serious offenses.  They have to be
6   punished.  Both of the parties agree that a sentence of
7   incarceration of 70 months, at the bottom end of the
8   guidelines, is appropriate here.  I agree as well and find that
9   that is sufficient but not greater than necessary for purposes
10  of 18 U.S.C. Section 3553.

11        As to supervised release, Count 1 requires a
12  supervised release term of four years; count 2, the supervised
13  release term would be one to three years; but they run
14  concurrently.  So, in any essence, there will be a four-year
15  term of supervised release.

16        Now, the conditions that are recommended on supervised
17  release have been addressed sort of.  They recommend dual
18  diagnosis assessment, participation in mental health treatment,
19  and participation in drug treatment.  They also recommend a
20  search provision.  I intend to adopt the -- recommendations 1,
21  2, and 3, but not 4 in its entirety.  Some parts of 4 are
22  appropriate, but it is boilerplate language, and some portions
23  of it are not appropriate in this case.  I intend to adopt the
24  condition for search of the defendant's person, property, and
25  residence.  "House" and "residence" are duplicative.  "Vehicle"

```
 1   and "property" are duplicative.  Papers are not relevant;
 2   computers are not relevant; electronic communications or data
 3   storage devices or media are not relevant; office is not
 4   relevant.  The remainder of the condition is appropriate.
 5            I find that the defendant lacks the ability to pay a
 6   fine; and, therefore, I do not intend to impose one.  The
 7   special assessment of $100 for each count of conviction is
 8   mandated by statute, so I intend to impose that.
 9            With regard to the recommendations that have been
10   requested, I recommend that Mr. Thompson be allowed to
11   participate in the RDAP program.  Beyond that, there is no
12   recommendation to the Bureau of Prisons that is appropriate.
13            I recommend to Mr. Thompson, however, that you be
14   selfish when you're in prison, that you take every educational
15   course you can, you participate in every program you can, you
16   learn as much about yourself as you can, and you be as gentle
17   with yourself as you can in adjusting to the human frailties
18   that you are blessed with.  And what I mean by that is, mental
19   health conditions and addictions are a lot like physical
20   illnesses that are chronic, that don't go away; and learning to
21   accept them is the key to having pour over them.  That's not an
22   easy route to take, and I am not in the position of telling you
23   what are the best steps to accomplishing that.  You are not in
24   the best position to do that either.  Hasn't worked so well
25   thus far.  What you need to be willing to do is to listen to
```

1   people who know, to take advice, to not feel like a failure
2   because you have a chronic condition, but to take
3   responsibility for all of your actions regardless of it.
4   That's what will keep you out of this courtroom and other
5   courtrooms in the future.
6          So my recommendation to you is to take care of
7   yourself.
8          *THE DEFENDANT:*  Yes, ma'am.
9          *THE COURT:*  Is there any need for clarification,
10  further explanation, argument, objection, or request for
11  continuance?
12         *MS. RHYNE:*  No, Your Honor.  Thank you.
13         *MR. HENRY:*  No, Your Honor.
14         There is one wish I have.  I know that the BOP doesn't
15  listen -- doesn't follow this -- I'm sorry if I said that
16  wrong.  Maybe as I get older, it is harder for me to
17  characterize things properly.  But I do believe sometimes they
18  listen to the recommendation of the Court on a placement.  And
19  if possible, Florence, because they do have an RDAP program
20  there, and all of his family lives in Colorado, and it would be
21  easier for him to have that association with them.
22         *THE COURT:*  I deny that request.  I do so for several
23  reasons.  First of all, you're exactly right.  The Bureau of
24  Prisons doesn't follow very many judicial recommendations.
25  According to my current tally, it's less than 50 percent.  The

1  second reason is that although I appreciate Mr. Thompson's
2  desire to be close to family, that is less important than all
3  of the treatment programs he needs to have, and he needs to
4  advocate for himself with regard to this.
5         The third reason is because proximity to family is
6  already something that the Bureau of Prisons takes into account
7  in figuring out what is the appropriate facility.  And the
8  fourth reason is that in my study of what recommendations the
9  Bureau of Prisons tends to follow, it is specific
10 recommendations to specific facilities for specific reasons
11 that cannot be addressed in other locations.  And, here, we
12 don't have that situation.
13         *MR. HENRY:*  I understand that.
14         *THE COURT:*  All right.
15         Then --
16         *MR. HENRY:*  If I could -- I'd -- I would like to thank
17 you for -- you gave a very good way of explaining the diabetes
18 example.  It is a very -- it's enlightened me on another way to
19 explain that, because I have several clients with the same
20 issue.  It's a very good explanation.  I appreciate it.  Thank
21 you.
22         *THE COURT:*  You're more than welcome.
23         Mr. Thompson, I'm going to offer you one other bit of
24 advice.  I have a service dog because I have a physical
25 condition that requires treatment.  It's a chronic condition,

1  and it's something that I have to learn to work with.  You have
2  a chronic condition too.  We both share that.  You need to
3  figure out a good way to work with yours, just like I work with
4  mine.
5         All right.  Having described the sentence that I
6  believe is sufficient but no greater than necessary, in
7  accordance with 18 U.S.C. Section 3553, pursuant to the
8  Sentencing Reform Act of 1984, it is the judgment of the Court
9  that the defendant, Jason Thompson, be committed to the custody
10 of the Bureau of Prisons to be imprisoned for a term of
11 70 months on Counts 1 and 2, to be served concurrently.
12        Within 72 hours of release from the custody of the
13 Bureau of Prisons, he'll report to the probation office in the
14 district to which he's released.  While on supervision, he'll
15 not commit another federal, state or local crime, and will not
16 unlawfully possess a controlled substance.  He will refrain
17 from any unlawful use of a controlled substance.
18        And let me stop right there and bring something to
19 your attention.  No marijuana.  It doesn't matter that it's
20 legal here or anywhere else; it's not legal for you.
21        You must submit to one drug test within 15 days of
22 placement on supervision and two periodic tests thereafter.
23 You must cooperate in the collection of DNA as directed by the
24 probation officer.  You must comply with the standard
25 conditions adopted by this court in General Order 2016-1, and

1  you must adhere to the special conditions that I have
2  delineated in my findings.  You must pay for the special
3  assessment of $200; but no fine is imposed, for the reasons
4  stated.
5       I advise you of your right to appeal.  If you reserved
6  that right in your plea agreement and you wish to appeal, you
7  must do so within 14 days of the date the judgment becomes
8  final.  If you do not do so within that time period, you lose
9  your right to appeal.  Your right to appeal is triggered by the
10 time the judgment is entered, and you exercise that right by
11 filing a notice of appeal.  Now, ordinarily, Mr. Henry would
12 take care of that for you; but if for some reason he is
13 unwilling or unable to do so and you wish to appeal, you may
14 request and I will direct the Clerk of Court to file a notice
15 of appeal on your behalf.
16      The recommendations that I make with regard to the
17 Bureau of Prisons are that the defendant participate in an RDAP
18 program.
19      Any need for clarification, further explanation,
20 supplementation of the record?
21      *MS. RHYNE:*  No, Your Honor.
22      *MR. HENRY:*  No, Your Honor.
23      *THE COURT:*  All right.  Then thank you very much,
24 counsel; thank you to our marshal staff and to our court staff.
25 That will conclude this matter, and we will stand in recess.

```
 1            (Recess at 11:57 a.m.)

 2                    REPORTER'S CERTIFICATE

 3            I certify that the foregoing is a correct transcript
      from the record of proceedings in the above-entitled matter.
 4
              Dated at Denver, Colorado, this 28th day of January,
 5    2019.

 6

 7                                 _____

 8                                 Therese Lindblom, CSR, RMR, CRR

 9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25
```